Johnie **MAYBEE**, Plaintiff and Appellee,

v.

**JACOBS MOTOR CO., INC.,** a South Dakota Corporation, Defendant and Appellant.

Nos. 18117, 18119.

Supreme Court of South Dakota.

Argued Sept. 1, 1993.

Decided July 20, 1994.

342

Frank Driscoll, of Gunderson, Farrar, Aldrich & DeMersseman, Rapid City, for appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

After discovering that the used 1984 van she purchased from appellant Jacobs Motor Company had a 1966 engine in it, Johnie Maybee commenced this action alleging negligent misrepresentation, fraud and deceit. In a memorandum ruling issued September 9, 1991, the trial court summarily dismissed the negligence claim, but not her fraud and deceit claim.

Following a June 1992 trial, the jury returned a verdict for Maybee, awarding compensatory damages of $14,700.00 and punitive damages of $75,000.00. Jacobs Motor, denied a directed verdict during trial, moved for judgment notwithstanding the verdict and, in the alternative, a new trial. Finding the evidence to support liability but not damages, the trial court granted a new trial solely on the award of damages. Jacobs Motor filed Notice of Appeal on October 30, 1992. Maybee, thereafter, filed Notice of Review on November 4, 1992. We review the following issues:

I. Did the trial court err by submitting this case to the jury?

II. Did the trial court abuse its discretion in granting a new trial solely on the issue of damages?

Although we find that the trial court properly submitted this case to the jury, we reverse and remand due to the clearly excessive damages awarded.

### FACTS

In October 1988, James Phipps traded his 1984 Chevrolet van to Jacobs Motor Company for another vehicle. The van's engine, however, had been previously replaced with a rebuilt engine using an engine block which had been manufactured in approximately 1966. This replacement engine used a canister-style oil filter, a type that has not been used on passenger vehicles since the late 1960s. Phipps maintains that he informed Jacobs Motor of the engine because he be-

Curt Ireland, Rapid City, for appellee.

lieved a rebuilt engine on a used vehicle to be a strong selling point.

During the van's ten months on the used car lot, Jacobs Motor added approximately 7,000 miles to the odometer, which included a round trip to Houston, Texas. Despite a standard policy of changing the oil and filter on trade-ins, Jacobs Motor asserts that such a service was never performed on the van. Because of this oversight, Jacobs Motor contends that the out-dated canister-style filter was never noticed by its employees.

Maybee and her husband visited Jacobs Motor Company in August of 1989. Salesman Paul Mitchell showed Maybee the van and invited her to take the van home overnight. Although Maybee had the opportunity to ask questions and have the van inspected by her own mechanic, she declined. Conversely, no employee of Jacobs Motor volunteered any information about the van's dieseling problem, oil leak problems, or the engine. However, when asked about the representations of Mitchell, Maybee testified, "He just said that it was an '84 van that was in good condition and that they had used it around the business." When Maybee purchased the van for $8,700.00, not knowing that the 1984 van had a 1966 engine, she signed a contract disclaiming all express and implied warranties.

Over a month after the purchase, Maybee's husband took the van to a mechanic because of oil leakage. The mechanic noticed the canister-style filter and, upon investigation, discovered that the engine had been manufactured in 1966 and was completely worn. Additionally, Maybee's expert testified:

> It's a high compression engine. It requires a higher octane and better grade of fuel than you can buy today, unless you go to an airport and buy aviation fuel.

Maybee contended before the jury that the proper engine had been switched with a 1966 engine, the engine was worn out, it did not run efficiently because of a high compression ratio, and the 1966 engine would stall out or cut out. Ultimately, Maybee testified the vehicle was parked in the yard because it "didn't work."

At trial, all nine witnesses from the auto dealership denied any knowledge, prior to the sale to Maybee, that the van's engine had been rebuilt with the 1966 engine block. Although not all service records for the van could be located, service personnel at Jacobs Motor denied ever changing the oil in the van.

Following a week-long trial, the jury found Jacobs Motor guilty of fraud and deceit and awarded compensatory damages of $14,700.00 and punitive damages of $75,000.00. Because the compensatory damages award was almost ten times the $1,450.00 cost of replacing the engine, the trial court, refusing to rule out mathematical errors or passion or prejudice by the jury, granted a new trial on damages. Jacobs Motor appeals the issue of liability. Maybee appeals the grant of a new trial on damages.

## DECISION

I. *Trial court properly submitted the case to the jury.*

 Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury. *Tucek v. Mueller,* 511 N.W.2d 832 (S.D.1994); *Garrett v. BankWest, Inc.,* 459 N.W.2d 833 (S.D.1990). An action for deceit requires proof that the misrepresentation was material to the formation of the contract and that the other party relied on the misrepresentation to her detriment. *Littau v. Midwest Commodities, Inc.,* 316 N.W.2d 639 (S.D.1982). Such misrepresentations include true statements which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter. Restatement (Second) of Torts § 229 (1977).

 The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence is determined by the jury, and we accord the jury some deference based on its observations of the witnesses and the evidence. *Mash v. Cutler,* 488 N.W.2d 642, 646 (S.D.1992). As the deceit claim arose from the purported failure of Jacobs Motor to inform Maybee that the 1984 van contained an engine which was 18 years its senior, the trial court properly submitted the issue to the jury to determine the

credibility of the witnesses and to determine if the omission constituted a misrepresentation. *Id.*

Jacobs Motor maintains that the trial court's actions are tantamount to overturning *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 499 (S.D.1990), which held, "This court has never imposed a duty to disclose information on parties to an arm's-length business transaction, absent an employment or fiduciary relationship." In *Taggart*, the defendants were not parties to the transaction; but in *Ducheneaux v. Miller*, 488 N.W.2d 902 (S.D.1992), both parties were parties to the transaction. We distinguished *Taggart* and applied Restatement (Second) of Torts § 551(2)(e):

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated
>
> . . . .
>
> (e) *facts basic to the transaction*, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

(Emphasis supplied.) Thus, the jury was properly left to decide if the engine's age and condition were facts basic to the Maybee–Jacobs Motor transaction.

■ Finally, Jacobs Motor employs, as a defense, Maybee's signed disclaimer of all express and implied warranties as a safety net for any wrongdoing, an affirmative defense, so to speak. Although "as is" clauses place the risk upon the buyer to accept the product with all its faults, this does not grant the seller a license to mislead the buyer or conceal facts. 37 Am.Jur.2d *Fraud and Deceit* § 158 (1968).

■ When a person purchases a 1984 vehicle, is the presence, within that vehicle, of an engine built for a 1966 model vehicle which requires a fuel not typically used by vehicles on the road today, a fact basic to the transaction? The jury so found and this Court finds that the evidence can support such a finding.

*Lytle v. Morgan*, 270 N.W.2d 359, 361 (S.D. 1978). Nevertheless, a new trial on all issues is warranted due to our decision in the second issue.

II. *For the reasons expressed below, excessive damages warrant a new trial on all issues.*

Maybee paid $8,700.00 for the van. Undisputed testimony revealed that replacing the 1966 engine would cost approximately $1,450.00. During closing argument, *Maybee's counsel stated that $1,500.00 would compensate his client.* Somehow, the jury calculated compensatory damages at $14,-750.00 and additionally awarded $75,000.00 in punitive damages. Based on the obvious error in the compensatory damages award, Jacobs Motor complains that the verdict and both damage awards are the result of passion or prejudice by the jury.

Although the compensatory damages were found to be erroneous and "closely intertwined" with the punitive damages, the trial court ruled that the evidence supported the liability verdict. Maybee was offered the option of remittitur of the compensatory damages with a new trial on punitive damages only, but declined. Thereafter, a new trial on both compensatory and punitive damages was ordered "for the reason that the Court cannot exclude the possibility of passion or prejudice in its award[.]" *See* SDCL 15–6–59(a)(5). However, the trial court recognizing that damage award was also clearly excessive, noted, "Both parties unequivocally agreed that the jury verdict is grossly inconsistent with the instructions and law."

■■ In granting or denying a new trial, the trial court has broad discretionary power. We will not disturb the trial court's decision in the absence of clear abuse. *Wasserburger v. Consolidated Mgmt. Corp.*, 502 N.W.2d 256 (S.D.1993); *BankWest, Inc. v. Valentine*, 451 N.W.2d 732, 735–36 (S.D.1990). Although a finding of passion or prejudice by itself is not sufficient grounds upon which to grant a new trial, *Wangen v. Knudson*, 428 N.W.2d 242, 247 (S.D.1988), it is apparent that the trial court's decision was also par-

tially based on a determination that the jury had mistaken the law. *Estate of Billings v. Jehovah Witnesses,* 506 N.W.2d 138, 143 (S.D.1993).

Although punitive damages must be relatively large to accomplish the objective of punishing the wrongdoer and deterring others from similar wrongdoing, *Hulstein v. Meilman Food Industries,* 293 N.W.2d 889 (S.D.1980), the award must not be oppressive or so large as to shock the sense of fair-minded people. *Oppenhuizen v. Wennersten,* 2 Mich.App. 288, 139 N.W.2d 765, 770 (1966). Granted, this Court has approved punitive damage awards more disproportionate than those awarded here, *Hulstein,* 293 N.W.2d at 892 (punitive damage award eleven times the compensatory damages affirmed); *K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529 (S.D.1983) (compensatory damages of $199.60 and $7,000.00 punitive damages affirmed); however, the fact that the compensatory damages award was exaggerated ten-fold over the proof and statement of Maybee's counsel, leaves Maybee with an award of such disproportion that this Court can only view it as clearly erroneous. *Sander v. Geib, Elston, Frost,* 506 N.W.2d 107 (S.D.1993); *Flagtwet v. Smith,* 393 N.W.2d 452, 455 (S.D.1986) (*Flagtwet II* ).

As it now stands, the punitive damages award is clearly excessive, and, therefore, must be reconsidered. However, a new trial on damages alone is not feasible

unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.... Here the question of damages on the construction is so interwoven with that of the liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.

*Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). The same holds true here because jury verdict indicates passion and prejudice as well as inconsistencies with the instructions and law. A trial solely on Maybee's damages would require essentially the same evidence as a trial on both the substantive merits of the fraud claim and damages. Because these issues are so interwoven, we find that they are not separable. The trial court's refusal to grant a new trial on all issues was an abuse of discretion. *Estate of Billings,* 506 N.W.2d at 143. Hence, a new trial on both damages and liability is warranted even though the evidence does support liability, which remains a jury question as held under Issue I. *McDonald v. Johnson & Johnson,* 722 F.2d 1370 (8th Cir.1983) *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *Slater v. KFC Corp.,* 621 F.2d 932 (8th Cir.1980).

Reversed and remanded.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.