United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

Nos. 96-3247/3312

_____

| | | |
|---|---|---|
| Leonard Penney; Helen Penney, | * | |
| | * | |
| Appellants/Cross-Appellees, | * | |
| | * | Appeals from the United States District |
| v. | * | Court for the District of South Dakota. |
| | * | |
| Praxair, Inc., | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: March 14, 1997
Filed: June 19, 1997

_____

Before WOLLMAN and BEAM, Circuit Judges, and REASONER,[1] District Judge.

_____

BEAM, Circuit Judge.

Leonard and Helen Penney appeal the district court's[2] denial of their motion for a new trial and the exclusion of certain medical evidence in this personal injury action.

_____

[1]The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Praxair cross-appeals the district court's denial of judgment as a matter of law as to future medical expenses. We affirm.

## I. BACKGROUND

This is a diversity action seeking damages for a rear-end collision which occurred in Iowa. Leonard Penney was sleeping in the front passenger seat of a car that was hit by a loaded tanker truck owned by Praxair. Because the accident occurred in a construction zone with reduced speeds, the truck was traveling at only five to ten miles per hour when the collision occurred. Upon impact, Leonard's head jerked backward and then snapped forward, resulting in a whiplash effect. Leonard claims that he suffers headaches, a sore neck, ringing in his ears, dizziness, vertigo, and other assorted problems as a result of this accident. Leonard was sixty-two years old at the time of the accident.

Leonard saw several physicians for relief of his ailments. After both an MRI and a CT scan detected no brain injury,[3] Leonard was referred to Dr. Wu, the Director of the Brain Imaging Center at the University of California, Irvine. Dr. Wu performed a Positron Emission Tomography (PET) scan of Leonard's brain. A PET scan measures glucose intake in the different sections of the brain; i.e., it measures brain function. Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 973 (8th Cir. 1995). A person's PET scan is then compared with PET scans from a control group to detect abnormalities in the brain. The control group in Leonard's case consisted of thirty-one persons, with ages ranging from eighteen to seventy. Dr. Wu testified, in a video deposition, that the results of Leonard's PET scan showed brain abnormalities which

_____

[3]According to the plaintiffs' submissions, closed head injuries are subtle tears in the brain tissue. Because the MRI and CT scans measure structural, not functional changes in the brain, closed head injuries are oftentimes not visible on those tests.

were consistent with a traumatic brain injury. Plaintiffs intended to use this testimony to prove the existence of a closed head injury.

Praxair filed a motion in limine to exclude the PET scan evidence. It argued that it was not reliable enough to withstand analysis under the Supreme Court's decision in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) and that the evidence would not be helpful to the jury. The district court excluded the PET scan results, reasoning that the evidence would not be helpful to the jury in deciding the issues when compared with the likelihood that the jury would misapply the evidence.

The action was tried and the jury found for the plaintiffs. Although it awarded $14,602 for past medical expenses and $20,000 for future medical expenses, the jury awarded no damages for loss of function or for pain and suffering. The Penneys moved for a new trial, claiming such a verdict was facially inconsistent and invalid as a matter of law. The district court denied the motion. On appeal, the Penneys challenge the district court's denial of their motion for a new trial and its exclusion of the PET scan evidence. Praxair cross-appeals, arguing there is no evidence to support the award of future medical damages.

## II. DISCUSSION

### A. New Trial

The Penneys argue that a new trial on damages is necessary to cure the facially inconsistent verdict handed down by the jury. We review the district court's denial of a new trial for an abuse of discretion. Morrison v. Mahaska Bottling Co., 39 F.3d 839, 845 (8th Cir. 1994). Applying that standard, we find no error.

Under Iowa law,[4] whether a particular award of damages is adequate turns on the facts of each case. Matthess v. State Farm Mut. Auto. Ins. Co., 521 N.W.2d 699, 702 (Iowa 1994). The test is whether the verdict "fairly and reasonably compensates" a person for the injury sustained. Id. The mere fact that the evidence presented at trial could have supported a higher damages award does not control the decision to grant a new trial. Foggia v. Des Moines Bowl-O-Mat, Inc., 543 N.W.2d 889, 891 (Iowa 1996). Instead, the court must determine whether, allowing the jury "its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties." Id.

In this case, Praxair disputed both the extent of Leonard's injuries and whether the collision proximately caused any pain and suffering. Before the accident, Leonard experienced neck and back problems. Between the time of the accident and trial, he had a heart attack and two angioplasty surgeries. These pre- and post-accident health problems are properly for the jury's consideration. McDonnell v. Chally, 529 N.W.2d 611, 615 (Iowa Ct. App. 1994). The jury had a difficult decision to make considering the evidence offered to discount Leonard's pain and suffering and to show alternative causes for his injuries. Given the conflicting evidence in this case, we find the damages award fairly and reasonably compensated Leonard for his injury. Consequently, we find no abuse of discretion by the district court in denying the plaintiffs' motion for a new trial on these grounds.

---

[4]Sitting in diversity, a district court is bound to apply the choice of law rules of the state in which it sits, here, South Dakota. Simpson v. Liberty Mut. Ins. Co., 28 F.3d 763, 764 (8th Cir. 1994). South Dakota has adopted the most significant relationship test as its choice of law rule in tort cases. Chambers v. Dakotah Charter, Inc., 488 N.W.2d 63, 67 (S.D. 1992). The district court determined that Iowa had the most significant relationship to this accident and, consequently, applied Iowa law. On appeal, the defendants challenge the application of Iowa law as to the damages issue only. We find no merit in this argument and apply Iowa law to this case, as did the district court.

-4-

## B.  PET Scan

The plaintiffs next contend that the district court erred in excluding the evidence of Leonard's PET scan.  Questions regarding the admission of expert evidence are committed to the sound discretion of the district court and will only be reversed upon a finding of an abuse of that discretion.  Westcott v. Crinklaw, 68 F.3d 1073, 1075 (8th Cir. 1995).  Applying that standard, we find no abuse of discretion in the district court's decision to exclude the PET scan evidence in this case.

General acceptance in the scientific community is no longer a precondition to the admission of scientific evidence.  Daubert, 509 U.S. at 597.  However, a trial judge must still ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Id.  "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  Id. at 592-93.  In this case, plaintiffs failed to establish a sufficient foundation to support the admission of the PET scan evidence.

According to the parties' submissions, PET scan results can be affected by a person's age, medical history and medications.  Because Leonard was sixty-six years old at the time of the scan, it is not clear from the record exactly how accurate a comparison this control group could provide.  Furthermore, although persons are normally instructed to remain off medication for seven days prior to the administering of a PET scan, Leonard submitted to the test while still taking his regular medications for his heart condition and other maladies.  None of the other control-group subjects was on medication at the time of their PET scans.  It is not clear whether these factors had any effect on the test results.  However, it was plaintiffs' burden to establish a reliable foundation for the PET scan readings.  On these facts, plaintiffs did not make

such a demonstration and it was within the district court's discretion to exclude the evidence.[5]

## C. Future Medical Expenses

Praxair cross-appeals the district court's denial of its motion for judgment as a matter of law on the award of future medical expenses. Praxair claims there is insufficient evidence in the record to support such an award. We review the denial of a motion for judgment as a matter of law de novo, Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996), viewing the evidence in the light most favorable to the jury verdict. Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994). We do not reweigh the evidence or consider the credibility of the witnesses. Id. Although damage awards may not be speculative or conjectural, but must be proven to a reasonable certainty, Marquardt v. Starcraft Marine, 876 F.2d 61, 63 (8th Cir. 1989), judgment as a matter of law is only appropriate where the evidence is "'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" Smith, 38 F.3d at 1460 (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)). Applying those standards, we find that there is sufficient evidence in the record to support the jury's award of future medical expenses.

The jury was presented with evidence of Leonard's need for additional medical attention. Both of the Penneys testified that Leonard continued to suffer symptoms from the accident and that they intended to continue seeking treatment for Leonard's pain, in spite of their previous lack of success. In addition, several of Leonard's doctors

---

[5]As the plaintiffs point out, we have previously upheld the admission of PET scan evidence. See, e.g., Hose, 70 F.3d at 973. However, because the admission of scientific evidence in one case does not automatically render that evidence admissible in another case, we assume that Hose did not present the same evidentiary problems as does this case.

testified that Leonard will require medication and treatment in the future. In determining the amount of future damages, the jury was presented with itemized bills of past medical expenses and instructed to consider the reasonably necessary medical expenses to be incurred in the future. From this evidence, the jury could reasonably estimate the cost of future medical expenses. See, e.g., Baumler v. Hemesath, 534 N.W.2d 650, 654 (Iowa 1995). This record contains sufficient evidence to sustain the jury's award of future medical expenses.

## III. CONCLUSION

The judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.